**E-FILED**
Thursday, 16 February, 2017  03:00:10 PM
Clerk, U.S. District Court, ILCD

# IN THE
# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
### ROCK ISLAND DIVISION

| | | |
|---|---|---|
| STACY M. HAYNES, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No.   4:16-cv-4106 |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION & ORDER

This matter is before the Court on the Amended Motion Under 28 U.S.C. §
2255 To Vacate, Set Aside, Or Correct Sentence (Doc. 3) filed by Stacy M. Haynes
(the "Petitioner"). The motion has been fully briefed and is ready for decision. For
the reasons discussed below, the motion is GRANTED in Part, DENIED in Part and
DISMISSED in Part. Mr. Haynes will be resentenced.

### I.     PRELIMINARY PROCEDURAL CONSIDERATIONS

The instant § 2255 motion (Doc. 3) is an amended successive motion.
Petitioner filed an original § 2255 motion in April 2000 that this Court heard and
denied. (*See* Doc.1, *Haynes v. United States*, No. 4:00-cv-4044 (C.D. Ill.)). Petitioner's
first successive § 2255 motion (Doc. 1) only contained two claims that were
presented to the Seventh Circuit for authorization to proceed in this court.
Petitioner has since amended his first successive § 2255 motion to include two
additional claims. Since they were not presented to the Seventh Circuit panel, the
Government argues that they are unauthorized claims. Paragraph (4) of subsection

(b) of 28 U.S.C. § 2244 clearly states that a district court <u>shall dismiss any claim</u> presented in a second or successive application that the court of appeals has authorized to be filed <u>unless</u> the applicant shows that the claim satisfies the requirements of this section. The term "application" is taken to refer to the habeas relief petition itself, but in this case the term refers to the § 2255 motion. *See* 2-28 *Federal Habeas Corpus Practice and Procedure* § 28.3. Nevertheless, a convicted prisoner is allowed to bring a successive attempt at habeas relief when such a prisoner's claim is based upon either a new rule of constitutional law or newly discovered evidence. 28 U.S.C. §§ 2244(b)(4), 2255(h)(2).

Before addressing the issue of whether these two additional claims are unauthorized, there is another ancillary issue to be decided, which is whether this amended motion is even properly before the Court. The Amended Motion (Doc. 3) was made without leave of Court and without the written consent of the Government. Counsel for Petitioner was appointed in this matter pursuant to Administrative Order 15-mc-1016 (available at http://www.ilcd.uscourts.gov/court-info/local-rules-and-orders/general-orders (last visited January 24, 2017)). That Order does not state that amendments to the initial motion are presumptively allowed although one might assume that the amendment of a *pro se* prisoner's application for habeas corpus, which is what the § 2255 motion really is, would always naturally follow the appointment of counsel. Given the significance of the motion and the hurdles a petitioner must face if she leaves out a viable claim and tries to bring it up later in a subsequent action, there is great peril in leaving the

*pro se* petitioner's pleading to stand without the input of the attorney appointed in the case.

But 28 U.S.C. § 2242 provides that the application for habeas corpus "may be amended or supplemented as provided in the rules of procedure applicable to civil actions." Rule 12 of the Rules Governing Section 2255 Proceedings for the United States District Courts provides that the "Federal Rules of Civil Procedure and the Federal Rules of Criminal Procedure, to the extent that they are not inconsistent with any statutory provisions or these rules, may be applied to a proceeding under these rules." Moreover, the Federal Rules of Civil Procedure themselves also provide that they apply to proceedings for habeas corpus. Fed. R. Civ. P. 81(a)(4). The Seventh Circuit has specifically held that "[t]he rules governing § 2255 do not deal with amendments for collateral review and therefore proposed amendments to § 2255 motions are governed by Fed. R. Civ. P. 15(a)." *Rodriguez v. United States*, 286 F.3d 972, 980 (7th Cir. 2002); *see also Mayle v. Felix*, 545 U.S. 644 (2005) (holding the same).

Rule 15(a)(1) of the Federal Rules of Civil Procedure allows a party to amend its pleading once <u>as a matter of course</u> within either twenty-one days after serving it, or if the pleading is one to which a responsive pleading is required, twenty-one days after service of a responsive pleading or twenty-one days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier. The first successive § 2255 motion (Doc. 1) was "served" upon Respondent on June 9, 2016 at the latest, which is when the Clerk added a specific Assistant United States Attorney to this action despite adding the United States of America as a party on June 6, 2016 when the

action was opened and docketed. *See* Fed. R. Civ. P. 5; CDIL-LR 5.3. Petitioner did not file the Amended Motion (Doc. 3) within twenty-one days of June 9, 2016, but rather more than three months later on September 30, 2016.

Despite that, Rule 15(a)(2) also provides that in all other cases, a party may amend its pleading <u>only</u> with the opposing party's written consent or leave of court. The docket does not reveal that the Government consented to the amendment and leave of court was not sought. However, the rule provides further that the Court is to freely give leave to amend a pleading when justice so requires. Given this permissive standard and the unique significance of the pro se habeas application discussed above, the Court finds it would be manifestly unfair to disallow the Amended Motion now, especially when the Court arguably acquiesced to the Amended Motion by entering an order directing the Government to respond to it. In the future though, proper leave of court should be sought. With that out of the way, the Court now turns to the issue of whether these two additional claims are indeed unauthorized and thus not capable of being heard by this Court.

Petitioner's first supplemental claim that he is actually innocent of the convictions for violating 18 U.S.C. § 1952 cannot be heard by this Court. The Seventh Circuit authorized Petitioner to move for relief for *Johnson*-related issues, not this stand-alone actual legal innocence claim. Because the Court sees little utility in forcing Petitioner to pursue this claim in a § 2241 petition in front of a court unfamiliar with the case—the court in the district where he is in custody—it has engaged in extensive research into whether it can retain jurisdiction over the claim. Alas, the Court has found no applicable exceptions. This claim does not fit

into the exceptions carved out in §§ 2244(b) and 2255(h) because it clearly does not

rely on a new rule of constitutional law nor does it rely on newly discovered

evidence.

The Court was tempted to turn to its own inherent ability to prevent

miscarriages of justice in order to reach the claim. However, in *United States v.*

*Williams*, 790 F.3d 1059, the Tenth Circuit thoroughly and convincingly explained

why a district court lacks the authority to reach this type of unauthorized actual

innocence claim in light of the Antiterrorism and Effective Death Penalty Act of

1996, Pub. L. No. 104-132, 110 Stat. 1214 (the "AEDPA"). That court explained that

in *McQuiggin v. Perkins*, 133 S. Ct. 1924 (U.S. 2013)—a case where the Supreme

Court held that in extremely rare circumstances, an actual innocence claim can

overcome 28 U.S.C. § 2244(d)(1)'s one year statute of limitations—the Supreme

Court recognized that where Congress had explicitly limited petitioners to evading

certain procedural bars in certain statutory provisions of the AEDPA, "Congress

clearly intended that courts may no longer invoke their common law miscarriage of

justice authority to allow petitioners to bypass the relevant procedural bar" and the

"courts must apply the exception as modified by Congress." 790 F.3d at 1076 citing

*McQuiggin*, 133 S. Ct. at 1934. The *Williams* court found that the AEDPA clearly

modified the common law miscarriage of justice exception by imposing a clear and

convincing burden of proof and by requiring preauthorization of successive

applications for habeas relief from the appropriate courts of appeals. *Id*. at 1076.

This Court finds the *Williams* court's explanation to be persuasive and concludes

5

that it may not utilize the miscarriage of justice exception to reach Petitioner's actual innocence claim. The claim is hereby dismissed.

Petitioner's second supplemental claim—that his robbery convictions under 18 U.S.C. § 1951 do not qualify as predicate crimes of violence under post-*Johnson* 18 U.S.C. § 924(c)—was also not included in the first successive § 2255 motion (Doc. 1) given to the Seventh Circuit for authorization. However, it is clearly predicated upon *Johnson* and thus the Court believes it is based upon a new rule of constitutional law and well within the scope of the claims the Seventh Circuit authorized this Court to reach. The Court will hear it.

## II.      LEGAL STANDARDS

Section 2255 of Title 28 of the United States Code provides that a sentence may be vacated, set aside, or corrected "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." "Relief under § 2255 is an extraordinary remedy because it asks the district court essentially to reopen the criminal process to a person who already has had an opportunity for full process." *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007). Thus, § 2255 relief is limited to correcting errors of constitutional or jurisdictional magnitude or errors constituting fundamental defects that result in complete miscarriages of justice. *E.g.*, *Kelly v. United States*, 29 F.3d 1107, 1112 (7th Cir. 1994), overruled on other grounds by *United States v. Ceballos*, 26 F.3d 717 (7th Cir. 1994). "A § 2255 motion is not a substitute for a direct appeal."

*Coleman v. United States*, 318 F.3d 754, 760 (7th Cir. 2003) (citing *Doe v. United States*, 51 F.3d 693, 698 (7th Cir. 1995)). Generally, a § 2255 motion must be filed within one year of the date the judgment against the petitioner became final. 28 U.S.C. § 2255(f)(1); *Clay v. United States*, 537 U.S. 522, 527 (2003) ("Finality attaches when this Court... denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires."). However, sub-paragraph (f)(3) provides that a § 2255 motion may be timely if it is brought within one year of the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review. 28 U.S.C. § 2255(f)(3).

## III.    FACTUAL BACKGROUND

Petitioner, Stacy M. Haynes, was convicted of several crimes after committing several armed robberies in the Quad Cities area of Iowa and Illinois in the mid-nineties. Specifically, as to the Illinois robberies Petitioner was convicted of three counts of Hobbs Act robbery in violation of 18 U.S.C. § 1951, as to the Iowa robberies he was convicted of three counts of interstate travel in aid of racketeering in violation of 18 U.S.C. § 1952, and lastly, he was also convicted of six counts of using and carrying a firearm in furtherance of a crime of violence under 18 U.S.C. § 924(c). The Government timely filed a notice of intent to seek a mandatory life sentence under 18 U.S.C. § 3559(c)(1) on each of the Hobbs Act robbery counts and the interstate travel in aid of racketeering counts. This Court found that Petitioner had the requisite number of prior "serious violent felonies" because he had twice been convicted of residential burglary in Illinois on two prior separate occasions. So

7

it sentenced him accordingly after a jury convicted him. The following table will help keep straight what count corresponded to what offense and what sentence.

| Count | Offense of Conviction | Sentence | § 3559 Applied |
|---|---|---|---|
| 1 | Robbery of Illinois Hy-Vee in violation of 18 U.S.C. § 1951 | Life | Yes |
| 2 | Use of a firearm in relation to Count 1 in violation of 18 U.S.C. §924(c) | 5 years consecutive to life and each and every other 924(c) conviction | No |
| 3 | Travel in Violation of 18 U.S.C. § 1952 for robbing Eagle Food Centers in Iowa | Life | Yes |
| 4 | Use of a firearm in relation to Count 3 in violation of 18 U.S.C. §924(c) | 20 years consecutive to life and each and every other 924(c) conviction | No |
| 5 | Travel in Violation of 18 U.S.C. § 1952 for robbing Jewel Food Store in Iowa | Life | Yes |
| 6 | Use of a firearm in relation to Count 5 in violation of 18 U.S.C. §924(c) | 20 years consecutive to life and each and every other 924(c) conviction | No |
| 8[1] | Robbery of Illinois K-Mart in violation of 18 U.S.C. § 1951 | Life | Yes |
| 9 | Use of a firearm in relation to Count 8 in violation of 18 U.S.C. §924(c) | 20 years consecutive to life and each and every other 924(c) conviction | No |
| 10 | Travel in Violation of 18 U.S.C. § 1952 for robbing Venture in Iowa | Life | Yes |
| 11 | Use of a firearm in relation to Count 10 in violation of 18 U.S.C. §924(c) | 20 years consecutive to life and each and every other 924(c) conviction | No |
| 12 | Robbery of Illinois Hy-Vee in violation of 18 U.S.C. § 1951 | Life | Yes |
| 13 | Use of a firearm in relation to Count 12 in violation of 18 U.S.C. §924(c) | 20 years consecutive to life and each and every other 924(c) conviction | No |

Years passed and then in 2015 the Supreme Court held in *Johnson v. United States*, 135 S. Ct. 2551, that the residual clause of 18 U.S.C. § 924(e)(2)(B)(ii) was void for vagueness and later held in *Welch v. United States*, 136 S. Ct. 1257 (U.S. 2016), that *Johnson* applies retroactively to cases on collateral review. *Johnson* announced a new rule of constitutional law and *Welch* explicitly made it retroactive

---

[1] In case one is curious, the jury failed to convict Petitioner of Count 7 of the Indictment; it too was a Hobbs Act robbery charge but without the involvement of a firearm.

to cases on collateral review. *Johnson*'s rule was not announced until June 2015 and thus was previously unavailable to Petitioner for use in his initial § 2255 motion filed several years earlier. Since *Johnson* was decided, the Seventh Circuit has held that the "residual clause" of 18 U.S.C. § 16(b) is unconstitutionally vague, *United States v. Vivas-Ceja*, 808 F.3d 719, 723 (7th Cir. 2015), the pre-August 1, 2016 Amendment "residual clause" of the United States Sentencing Guidelines § 4B1.2(a)(2) was unconstitutionally vague, *United States v. Hurlburt*, 835 F.3d 715, 721 (7th Cir. Aug. 29, 2016), and that 18 U.S.C. § 924(c)'s "residual clause" is also unconstitutionally vague. *United States v. Cardena*, 842 F.3d 959, 996 (7th Cir. 2016).

## IV.    DISCUSSION

### A.    18 U.S.C. § 3559(c)(1) Enhanced Mandatory Life Sentence Applied to Counts 1, 3, 5, 8, 10, and 12.

Recognizing the encouraging handwriting on the wall, Petitioner now moves to vacate his six concurrent mandatory life sentences under 18 U.S.C. § 3559(c)(1) because that statute's definition of the term "serious violent felony" utilizes language almost identical to language that has been held to be unconstitutionally vague. *See* 18 U.S.C. § 3559(c)(2)(F)(ii). The Court found that Petitioner qualified for the enhanced sentence under 18 U.S.C. § 3559 because he had Illinois residential burglary convictions that qualified as "serious violent felonies." However, residential burglary is not one of the specifically enumerated offenses in 18 U.S.C. § 3559(c)(2)(F)(i). Thus, residential burglaries only qualified as "serious violent felonies" under 18 U.S.C. § 3559(c)(2)(F)(ii)'s equivalent "residual clause." The

9

Government concedes that if 18 U.S.C. § 3559(c)(2)(F)(ii)'s "residual clause" is found to be unconstitutional then Petitioner's residential burglaries could not qualify as "serious violent felonies." It offers no meaningful opposition to Petitioner's claim as it recognizes both that the language at issue is almost identical to the language in the residual clauses that have been found unconstitutionally vague and that the Court is bound by circuit precedent.[2]

Accordingly, the Court sees no reason to not follow circuit precedent and therefore finds that 18 U.S.C. § 3559(c)(2)(F)(ii)'s "residual clause" is so similar to the "residual clauses" at issue in *Vivas-Ceja*, *Hurlburt* and *Cardena* that this Court is compelled to conclude that it too is unconstitutionally vague. The Court's application of 18 U.S.C. § 3559(c) to Petitioner cannot stand. He must be resentenced on Counts 1, 3, 5, 8, 10, and 12. The Pre-Sentence Investigation Report prepared for Petitioner calculated a total offense level of 37 and a criminal history category of VI, which placed Petitioner in the range of 360 months to life for Counts 1, 3, 5, 8, 10, and 12.

**B.    Use and Carry of a Firearm 18 U.S.C. § 924(c) Offenses in relation to the Convictions for Violating 18 U.S.C. §§ 1951 (Counts 1, 3, and 12) and 1952 (Counts 5, 8, and 10): Counts 2, 4, 6, 9, 11, and 13.**

Petitioner also claims that his § 924(c) convictions based on Hobbs Act robbery convictions under 18 U.S.C. § 1951 (Counts 2, 9 and 13) and his § 924(c) convictions based on interstate travel in support of racketeering convictions under

_____

[2] The Government did briefly recount the reasons it believes these precedential cases were wrong in order to preserve the issues upon appeal. There is little reason for this Court to discuss them, as this Court cannot overrule the Seventh Circuit. The Court notes that such objections have been made and are part of the record.

18 U.S.C. § 1952 (Counts 4, 6, and 11) must be overturned as well because of *Johnson* and subsequent cases applying *Johnson*'s holding. Petitioner argues that these predicate convictions must be overturned as a consequence of the voiding of the residual clause of § 924(c) and the fact that a Hobbs Act robbery can be accomplished without the use of physical force, as that term is understood in the case law. All six of the § 924(c) convictions hinge to a varying degree on whether "robbery" as defined in 18 U.S.C. § 1951(b)(1) has as an element "the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A).

Section 924(c)(1)(A) states in relevant part that "any person who, during and in relation to any crime of violence… uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence" be subjected to some very severe penalties. "Crime of violence" <u>was</u> defined as an offense that is a felony and—

> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3). *Cardena* held that 18 U.S.C. § 924(c)(3)'s residual clause is unconstitutionally vague under the principles set forth in *Johnson*. 842 F.3d at 996 ("we hold that the residual clause in 18 U.S.C. § 924(c)(3)(B) is also unconstitutionally vague."). Thus, a crime of violence under § 924(c)(3) can only be a

felony that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A).

Petitioner argues that the definition of "crime of violence" utilized in 18 U.S.C. § 1952 in his trial is the definition provided for in 18 U.S.C. § 16(b) as it existed before *Johnson* and *Vivas-Ceja* were decided, and thus includes the phrase "any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense," commonly referred to as the "residual clause." Petitioner argues further that the presence of this residual clause renders it broader than the post-*Johnson*, post-*Cardena* version of § 924(c)(3)'s residual clause and renders the two statutes incapable of matching up under the familiar categorical approach originally espoused in *Taylor v. United States*, 495 U.S. 575, 600 (1990) and later elucidated in *Mathis v. United States*, 136 S. Ct. 2243 (2016). In other words, viewing the definition of "crime of violence" as an element of the § 1952 offense, that element is broader than the definition of the § 924(c)(3) residual clause because the § 1952 offense encompassed the pre-*Vivas-Ceja* version of §16(b). Therefore, the two statutes do not match up under the categorical approach as explained by the Supreme Court in *Mathis*.

The Government responds that *Mathis* is not properly applicable to this case. This is supposedly so because in *Mathis*, the court was concerned with whether a sentencing judge had properly determined whether the defendant had qualifying convictions for an enhanced sentence under 18 U.S.C. § 924(e). Whereas here, in contrast, a jury found that Petitioner had engaged in a crime of violence under 18

12

U.S.C. § 924(c)(3), the underlying offense being a Hobbs Act robbery that has the use of physical force against a person or property as an element. Moreover, each of Counts 1, 3, 5, 8, and 10 contained language that accused Petitioner of displaying a firearm while committing the offense.

The Court sees no meaningful distinction between whether the sentencing judge or the jury made the finding. As most recently observed in *Cardena*, the categorical approach is utilized to determine whether a statute qualifies as a crime of violence under § 924(c). 842 F.3d at 997. The categorical approach is the same whether one is dealing with § 924(c), as here, or with § 924(e), as in *Mathis*. A finding was made that resulted in a penalty being assessed against the Petitioner. The only relevant inquiry is whether or not the finding was made with a proper definition of the "crime of violence" element.

The Government explains that to convict Petitioner on the § 924(c) Counts 4, 6, and 11, the jury had to find beyond a reasonable doubt that he violated § 1952 by travelling interstate and committing the Hobbs Act robberies alleged in Counts 3, 5, and 10, each of which alleged that the crime of violence at issue was a "robbery" as that term is defined in 18 U.S.C. § 1951(b)(1). (Doc. 7 at 17-18; *see also United States v. Haynes*, No. 96-cr-40034, Doc. 5 at 2-4, 7).

The Government concedes that the Petitioner's jury was instructed that the robberies at issue required the taking or obtaining of property from a person "by means of actual or threatened force, or violence or fear of injury, immediate or future, to his person or property." (Doc. 7 at 19). The Hobbs Act defines the term "robbery" to mean "the unlawful taking or obtaining of personal property from the

13

person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining." 18 U.S.C. § 1951(b)(1). If the Hobbs Act robbery can be accomplished without the use of physical force, then its elements are too broad to match up with the appropriate "crime of violence" term in § 924(c) under the categorical approach as explained by the Supreme Court in *Mathis*, 136 S. Ct. 2243. This is so because the crime of violence is an indivisible element of the § 924(c) offense. As far as this Court has researched, no jury—certainly not the Petitioner's—was ever asked to unanimously decide on whether they concluded a § 924(c) offense was warranted under the elements clause or the now-defunct residual clause, regardless of whatever language was included in the counts of the charging instrument.

Moreover, the parties agree that when applying the categorical approach, a court presumes "the conviction rested on the least serious acts that could satisfy the statute," *United States v. Armour,* 840 F.3d 904, 908 (7th Cir. 2016), and that the "least serious act" would be fear of injury to property. Rather than recapitulate the Petitioner's argument further, the Court will quote him directly:

> Indeed, under the Hobbs Act's definition of robbery, the fear of injury need not even be immediate but can be in the future, and the property need not even belong to the immediate victim as the property can belong to someone else. *See id.* This alone prevents Hobbs Act robbery from qualifying as a crime of violence under § 924(c)'s force clause, because as just explained, that clause requires violent (i.e., strong) physical force against a person or property. But property can quite

14

obviously be injured without the use of violent force – <u>or even any force at all</u>. As a means of compelling a victim to surrender valuable property against his will, a threat to deface a victim's Picasso painting with a magic marker pen, to black out lines in rare documents, or to flush drugs down the toilet is likely to be as or more effective as a threat to punch the victim in the face. Each involves a clear "threat of injury" and thus each would satisfy the elements of Hobbs Act robbery, but only the threat to punch the victim in the face involves the use of violent physical force. In short, although the threats to property described above involve physical actions, they do not involve physical force within the meaning of *Johnson v. United States*, 559 U.S. 133, 140 (2010) ("physical force" means "violent force" – that is "strong physical force," which is "capable of causing physical pain or injury to another person.").

(Doc. 3 at 19 (emphasis added)). The Court finds the Petitioner's argument is not without merit. The Government responds by citing cases for the proposition that the Hobbs Act "fear of injury" is equivalent to the threatened use of physical force. *See United States v Duncan*, 833 F.3d 751, 755 (7th Cir. 2016); *Armour*, 840 F.3d at 907. The Court finds those cases and their holdings are either not applicable, or not persuasive, as the case may be, for the following two reasons.

First, those Seventh Circuit cases cited by the Government dealt exclusively with the fear of bodily injury. The plain language of the statute provides that a Hobbs Act robbery can be accomplished by causing a victim to have "fear of injury" to property, and "damage" to property can be accomplished without any force whatsoever. The language of the term "fear of injury" seems broad enough to encompass instances of the loss of economic value rather than only a physical destruction brought about through the use of physical force. A case the Government cites in its opposition brief makes this point clearly. "Hobbs Act robbery under § 1951, however, prohibits 'the unlawful taking or obtaining of personal property from

15

the person or in the presence of another, against his will' by various different methods. The statute thus does not punish behavior that merely results in physical injury." *United States v. Wheeler*, No. 15-CR-216, 2016 WL 783412, at *4 (E.D. Wis. Jan. 6, 2016), <u>report and recommendation adopted,</u> No. 15-CR-216-PP, 2016 WL 799250 (E.D. Wis. Feb. 29, 2016). Mere touching alone is not enough to show physical force. *Duncan*, 833 F.3d at 754. There are items in this world that possess some value simply because no one else has touched them; rare baseball cards devoid of fingerprints, rare comic books wrapped in thick plastic that have never been opened, for example. These items would lose value if slightly handled directly in a loving fashion, let alone in a haphazard or forceful manner calculated to physically harm the item, and the owners fear the resulting injury—the loss of pecuniary value—so they take great measures to protect these items from normal wear and tear of handling. Given that recognition—that the statute punishes conduct that does not merely result in physical injury—it is difficult for this Court to understand how it can conclude "robbery by fear of injury… <u>necessarily</u> involves a threat to use <u>physical force</u> if the robber's demands are not met" as the Government argues. *See Wheeler*, 2016 WL 783412 at *4-5.

Second, the Court is skeptical of the Government's argument that the term "fear of injury" that appears in the definition of Hobbs Act "robbery" is the equivalent of the threatened use of physical force as a matter of statutory interpretation. This Court reads the statute to mean that a robbery is effectuated when either force, violence or fear of injury to the person or property of another are utilized to take a possession. 18 U.S.C. § 1951(b)(1). The statute would not include

these three terms "force", "violence", "fear of injury" disjunctively as alternate means of violating the statute if they all meant the same thing. The Court will spare the reader from another table however, the reader should understand that the language of the statute provides several distinct definitional combinations that explain the different ways in which one can violate this statute. For example, one could use immediate actual force, or future threatened force, or future fear of injury, or immediate fear of injury, all to effectuate an unlawful taking. In short, the statute utilizes these three terms to bring within its purview a broader range of conduct than it could have done otherwise if the terms all meant the same thing. The Court believes this reading of the statute better comports with the familiar canon of statutory interpretation that a court should not interpret a statute in such a way that renders any part of it superfluous or otherwise ineffective. *See Duncan v. Walker*, 533 U.S. 167, 174 (2001).

Nevertheless, the Government also relies on the very recent case, *United States v. Anglin*, 2017 WL 359666 (7th Cir. Jan. 25, 2017), in which the Seventh Circuit squarely held that a Hobbs Act robbery qualifies as a "crime of violence" under 18 U.S.C. § 924(c)(3)(A). After reciting the statutory definition of robbery, the *Anglin* court wrote "[c]ommitting a [Hobbs Act robbery] necessarily requires using or threatening force." 2017 WL 359666, at *7. Although the opinion does not discuss whether the statute is broad enough to allow one to commit the robbery by inducing fear of injury to property without force under the statute, the language of the holding is broad and unequivocal and leaves little room for a contrary holding by a subordinate court. Moreover, while the appellant in *Anglin* only cursorily

presented the issue of what is the meaning of "fear of injury" in his briefing to the
Seventh Circuit, the Government addressed the issue fully. It argued to the
appellate court that, "'[f]ear of injury' follows the phrase 'actual or threatened force,
or violence.' In statutory construction, '[t]hat several items in a list share an
attribute counsels in favor of interpreting the other items as possessing that
attribute as well.' *Beecham v. United States*, 511 U.S. 368, 371 (U.S. 1994).
Accordingly, 'fear of injury' shares the attribute of 'force' with the 'first three items
in the list' in the statute, and 'it is best understood as fear of injury *from the use of
force*.'" (Doc. 30 at 33, *United States v. Anglin*, No. 15-3625). The Seventh Circuit
had to have considered the Government's argument regarding the meaning of "fear
of injury" in the calculus of their decision.

Given *Anglin*'s holding, this Court concludes that Petitioner's three
convictions under 18 U.S.C. § 924(c)(3) based directly upon Hobbs Act robbery as
the predicate "crime of violence" (Counts 2, 9, and 13) remain valid under *Johnson
v. United States*, 135 S. Ct. 2551 (U.S. 2015) and *United States v. Cardena*, 842 F.3d
959, 996 (7th Cir. 2016). That is so because if the Hobbs Act robbery necessarily
requires using or threatening force, then it clearly suffices as a "crime of violence"
under 18 U.S.C. § 924(c)(3)(A).

As for the § 924(c) convictions predicated on the 18 U.S.C. § 1952 convictions
based upon Hobbs Act robberies as the predicate "crimes of violence," logic would
suggest that they too must stand in light of *Anglin*. Petitioner's argument was that
the elements of the § 1952 offense are (1) traveling in interstate commerce; (2) with

the intent to commit a "crime of violence" to further unlawful activity; and (3) thereafter committing or attempting to commit such "crime of violence" to further unlawful activity. According to Petitioner, these elements of the offense do not have the use, attempted use or threatened use of physical force against the person or property of another. This is supposedly so because the actual "crime of violence" committed is simply a means of establishing the "crime of violence" element.

The Court disagrees with this aspect of the Petitioner's argument. Section 924(c) applies to "crimes of violence" and 18 U.S.C. § 1952 uses the same term. If the crime alleged to be the "crime of violence" for the § 1952 conviction has as an element the use or threatened use of force, then § 924(c) is inherently satisfied. Here, the ultimate "crime of violence" alleged in the Indictment was robbery and the definition of "robbery" given was from 18 U.S.C. § 1951(b)(1). In order to find Petitioner guilty of the § 924(c) violations, Petitioner's jury had to find he committed or attempted to commit Hobbs Act robberies, which *Anglin* holds necessarily requires using or threatening force. That means the use or threat of force was an implicit element of each of the § 924(c) convictions predicated on the § 1952 convictions, which were in turn predicated on Hobbs Act robberies.

Very recently, this Court concluded that a crime of violence used in a § 924(c) conviction was sound under *Mathis* (and the cases that preceded *Mathis*) because the underlying crime was ultimately one where the jury was compelled to find that the defendant had engaged in the use of violent force. *See DeSilva v. United States*, No. 4:16-CV-4134, 2016 WL 6495393 (C.D. Ill. Nov. 2, 2016). In *DeSilva*, the nature of the ultimate crime was such that there had to have been an element of physical

19

force in order for the jury to find DeSilva guilty of the § 924(c) offense. *See id.* at *6 (underlying offense was attempted Illinois aggravated battery with a firearm which obviously fit as the use or carrying of a firearm while committing a crime of violence). Here, *Anglin* makes clear that the underlying Hobbs Act robbery necessarily has as an element the use or threatened use of force. 2017 WL 359666, at *7. Therefore, these § 924(c) convictions predicated on the Hobbs Act robberies directly as the ultimate crime of violence are elementally sound and remain valid after *Johnson*. This is so even though Petitioner may question the validity of his underlying convictions for violating 18 U.S.C. § 1952.

The Government charged Petitioner with three counts of unlawfully travelling interstate to further racketeering activity in violation of 18 U.S.C. § 1952. The elements of that statute that the Government needed to prove were that Petitioner 1) travelled interstate with the intent to 2) commit a crime of violence to further unlawful activity and 3) thereafter did commit or attempted to commit that crime of violence to further the unlawful activity. The statute does not define "crime of violence," so the definition of that term comes from 18 U.S.C. § 16. However, § 1952 does define "unlawful activity" and robbery is not one of the listed offenses that suffices as "unlawful activity" although "extortion" is, and that is what the Government alleged constituted the unlawful activity. Arguably, this was questionable given that extortion entails taking one's property with consent while robbery entails taking one's property against their will.[3] This illogical discrepancy,

---

[3] The jury instruction provided in Petitioner's trial defined extortion in this way. It should be noted that the Seventh Circuit pattern instructions demonstrate that a Hobbs Act

while perhaps calling into question whether Petitioner was properly convicted of violating § 1952, however, means nothing to the question of whether the "crime of violence" at the heart of the § 1952 offense matches up categorically with the "crime of violence" defined in 18 U.S.C. § 924(c). *Anglin* makes clear that the Hobbs Act robbery satisfies the elements clause of § 924(c)(3)(A). 2017 WL 359666, at *7. The Hobbs Act robbery also satisfies the elements clause of the "crime of violence" definition, 18 U.S.C. § 16(a), since the language is the same as in 18 U.S.C. § 924(c)(3)(A). *See* 18 U.S.C. §§ 16(a) and 924(c)(3)(A) (crime of violence is "an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another.").

### C.    Procedural Default

The Government asserts that Petitioner procedurally defaulted both his claim that his three § 924(c) counts predicated on his § 1952 offenses violate *Johnson* and his claim that his three § 924(c) counts predicated on his § 1951 offenses violate *Johnson*. Petitioner failed to pursue either claim on direct appeal. A petitioner may not generally pursue a claim on collateral review that he failed to raise on direct appeal unless he demonstrates cause and prejudice or that he is actually innocent. *Massaro v. United States*, 538 U.S. 500, 504 (2003). The rule is prudential in nature; it does not originate from any statutory or constitutional source. *Id*. The goal of the rule, which originated in the context of § 2254 petitions,

---

extortion can be "robbery" or "non-robbery." The "non-robbery" extortion offense has the victim's consent as an element while the "robbery" extortion offense does not. *See* Seventh Circuit Pattern Criminal Jury Instructions Section 1951.

is to ensure finality of convictions and reservation of scarce federal judicial resources. *See McClesky v. Zant*, 499 U.S. 467, 490-91 (1991).

Petitioner primarily argues that he is actually innocent of the § 924(c) offenses related to his § 1952 convictions. The Court disagrees. The actual innocence standard enquires into whether "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted [petitioner]." *Bousley v. United States*, 523 U.S. 614, 623 (1998). Petitioner's argument is that he was convicted of overbroad statutory definitions as a result of legal developments not factual deficiencies. There is ample evidence that the Petitioner committed six crimes of violence under the elements clause of §924(c) in that he indisputably robbed stores at gunpoint and threatened use of physical force against several persons by threatening to shoot them if they did not comply with him. The Court does not have much doubt that had the jurors been given the current proper versions of § 924(c) and §16(b) in their deliberations, they could, and probably would, have still found Petitioner guilty. Therefore, the Court cannot find that Petitioner is actually innocent of the underlying offenses for the purpose of excusing procedural default.[4]

Petitioner clearly asserts that actual innocence precludes a finding of procedural default. (Doc. 8 at 4-6). And the Court does not agree. However, the Court interprets Petitioner's brief discussion of the evolution of the categorical approach and the rationale of *Johnson* (Doc. 8 at 6-7) as an argument that the novelty of his claims also excuses his procedural default.

---

[4] No one should construe this discussion to relate to Petitioner's stand-alone actual innocence claim that was dismissed. (*See supra* at 4-6).

A petitioner can establish cause for his procedural default by demonstrating that there was no reasonable basis in existing law for him to bring the claim on direct appeal. *Reed v. Ross*, 468 U.S. 1, 14-15 (1984) (cited in *Bousley*, 523 U.S. at 622). This is not the same argument as futility. *Bousley*, 523 U.S. at 622 (noting that the petitioner there also raised the issue of futility in addition to novelty). Petitioner argued his appeal in 1998. This Court was unable to find a single case in the legal databases it searched that dealt with voidness of the residual clause before 2000. Thus, this is a far cry from the situation in *Bousley*, where "the Federal Reporters were replete with cases involving" the issue there when the petitioner presented his direct appeal and the novelty argument was rejected on that basis. 523 U.S. at 622. Moreover, the issues of the residual clause's "shoddy draftsmanship" and possible vagueness did not even come before the Supreme Court until 2007 in *James v. United States*, 550 U.S. 192, 229 (2007) (Scalia, J., dissenting). In short, this is one of those rare cases where the petitioner has demonstrated cause for his procedural default by demonstrating that there was no reasonable basis in existing law for him to bring the claim on direct appeal.

A petitioner still needs to establish that he was prejudiced for his procedural default to be excused. The prejudice that a petitioner must establish in these sorts of claims was articulated in *United States v. Frady*, 456 U.S. 152, 168-70 (1982), which requires a showing of actual and substantial disadvantage. Petitioner's § 924(c) crimes netted him a total of 105 consecutive years of imprisonment beyond the six concurrent life sentences for the § 1951 and § 1952 convictions, so it is obvious that he suffered an actual and substantial disadvantage from these

convictions. For these reasons, the Court finds that Petitioner's procedural default is excused and the merits of his claims were properly addressed.

### D.    Evidentiary Hearing

Rule 8 of the Rules Governing Section 2255 Proceedings for the United States District Courts requires courts to determine whether evidentiary hearings are required in instances where the § 2255 motion has survived screening. The Court does not find that such a hearing is necessary here. However, because both the parties and the Court referenced the jury instructions given in the underlying criminal case, *United States v. Haynes*, No. 96-cr-40034, and such instructions are not accessible via the Court's EM/ECF system, the Court obtained a copy from the Clerk of Court and attaches them as an exhibit to this Opinion & Order. If the parties have an objection to the authenticity of the jury instructions, they may file an appropriate motion.

### E.    Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2255 Proceedings for the United States District Courts requires the district court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Accordingly, the Court must determine whether to grant Petitioner a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2).

According to 28 U.S.C. § 2253, a habeas petitioner will only be allowed to appeal issues for which a certificate of appealability has been granted. *Sandoval v. United States*, 574 F.3d 847, 852 (7th Cir. 2009). A petitioner is entitled to a certificate of appealability only if he can make a substantial showing of the denial of

a constitutional right. *Id.* (citing 28 U.S.C. § 2253(c)). Under this standard, a petitioner must demonstrate that "reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Consistent with the discussion above, the Court finds that reasonable jurists could differ with the Court's treatment of Petitioner's § 2255 motion. Other jurists may opine that the elements of the underlying Hobbs Act robbery offenses cannot be deemed subsumed within the elements of the 18 U.S.C. § 1952 offenses for purposes of analyzing whether the element of use of force, attempted force or threatened force was present in the 18 U.S.C. § 924(c) offenses. Furthermore, the Court has expressed skepticism with the Government's argument that "fear of injury" is equivalent to the "threatened use of physical force" in the statutory definition of robbery in 18 U.S.C. § 1951. The *Anglin* decision—although holding that Hobbs Act robbery necessarily requires using or threatening force—did not address that the Hobbs Act's definition of "robbery" includes "fear of injury" to property as well as fear of injury to the person of another. That aspect of the robbery definition seems ripe for debate amongst reasonable jurists. Therefore, the Court certifies these issues for appeal pursuant to 28 U.S.C. § 2253(c)(2).

## V.   CONCLUSION

Petitioner, Stacy M. Haynes's Amended Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence (Doc. 3) is GRANTED in part, DENIED in part and DISMISSED in Part; the Court passes no judgment on Petitioner's claim

that he is actually innocent of his convictions for violating 18 U.S.C. § 1952.
Petitioner's mandatory concurrent life sentences in *United States v. Haynes*, No. 96-cr-40034 (C.D. Ill.) are VACATED for resentencing.

Also before the Court is Petitioner's original Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence (Doc. 1). That document is moot because the Court accepts the Amended Motion as properly filed. The Clerk shall terminate it from the electronic docket. This civil action is now TERMINATED.

Entered this <u>16th</u> day of February, 2017.


s/ Joe B. McDade<br>
_____<br>
JOE BILLY McDADE<br>
United States District Court Judge

# EXHIBIT A

Members of the jury, the evidence and arguments in this case have been completed, and I will now instruct you as to the law applicable to this case. It is your duty to follow all of the instructions.

You must not question any rule of law stated by me in these instructions. Regardless of any opinion you may have as to what the law ought to be, you must base your verdict upon the law given by me.

It is your duty to determine the facts from the evidence in this case. You are to apply the law given to you in these instructions to the facts and in this way decide the case.



FILED

OCT 22 1997

JOHN M. WATERS, Clerk
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS



YOU ARE THE SOLE JUDGES OF THE CREDIBILITY OF THE WITNESSES AND THE WEIGHT TO BE GIVEN TO THE TESTIMONY OF EACH OF THEM.  IN CONSIDERING THE TESTIMONY OF ANY WITNESS, YOU  MAY TAKE INTO ACCOUNT HIS INTELLIGENCE, HIS ABILITY AND OPPORTUNITY TO OBSERVE, HIS AGE, HIS MEMORY, HIS MANNER WHILE TESTIFYING, ANY INTEREST, BIAS, OR PREJUDICE HE MAY HAVE, AND THE REASONABLENESS OF HIS TESTIMONY CONSIDERED IN THE LIGHT OF ALL THE EVIDENCE IN THE CASE.

YOU SHOULD JUDGE THE TESTIMONY OF THE DEFENDANT IN THE SAME MANNER AS YOU JUDGE THE TESTIMONY OF ANY OTHER WITNESS.

Neither by these instructions nor by any ruling or remark which I have made do I mean to indicate any opinion as to the facts or as to what your verdict should be. You are the sole and exclusive judges of the facts.

Opening statements of counsel are for the purpose of acquainting you in advance with the facts counsel expect the evidence to show. Closing arguments of counsel are for the purpose of discussing the evidence.

Opening statements, closing arguments or other statements or arguments of counsel do not constitute evidence. Opening statements and closing arguments of counsel should be disregarded to the extent they are not supported by the evidence.

During the course of trial it often becomes the duty of counsel to make objections and for me to rule on them in accordance with the law. The fact that counsel made objections should not influence you in any way.

The jury should decide this case solely on the evidence presented here in the courtroom.  You must completely disregard any press, television or radio reports which you may have read, seen or heard.  Such reports are not evidence; therefore, you must not be influenced in any manner whatever by such publicity.

The defendant, Stacy M. Haynes, is charged with the crimes of interference with commerce by threats or violence, interstate travel in aid of racketeering enterprises, and using and carrying a firearm during and in relation to a crime of violence. The defendant has denied that he is guilty of the charges.

The indictment in this case is the formal method of accusing the defendant of a crime and placing him on trial. It is not any evidence against the defendant and does not create any inference of guilt.

The defendant is presumed to be innocent of the charge.  This presumption remains with the defendant throughout every stage of the trial and during your deliberations on the verdict, and is not overcome unless from all the evidence in the case you are convinced beyond a reasonable doubt that the defendant is guilty.

The government has the burden of proving the guilt of the defendant beyond a reasonable doubt, and this burden remains on the government throughout the case.  The defendant is not required to prove his innocence or to produce any evidence.

Each count of the indictment charges the defendant with having committed a separate offense.

Each count and the evidence relating to it should be considered separately, and a separate verdict should be returned as to each count. Your verdict of guilty or not guilty of an offense charged in one count should not control your decision as to any other count.

There are two types of evidence:  direct and circumstantial.  Direct evidence is the testimony of a person who claims to have personal knowledge of the commission of the crime which has been charged, such as an eyewitness.  Circumstantial evidence is the proof of a chain of facts and circumstances which tend to show whether the defendant is guilty or not guilty.  The law makes no distinction between the weight to be given either direct or circumstantial evidence.  Therefore, all of the evidence in the case, including the circumstantial evidence, should be considered by you in arriving at your verdict.

The evidence consists of the sworn testimony of the witnesses, the exhibits received in evidence, and stipulated, admitted, or judicially noticed facts.

A stipulation is an agreed statement of facts between the parties, and you should regard agreed statements as true.

I have taken judicial notice of public places which I regard as matters of common knowledge. You may, but are not required to, accept those facts as proved.

You are to consider only the evidence received in this case. You should consider this evidence in the light of your own observations and experience in life. You may draw such reasonable inferences as you believe to be justified from proved facts.

You are to disregard any evidence to which I sustained an objection or which I ordered stricken. Anything you may have seen or heard about this case outside the courtroom is not evidence and must be entirely disregarded. You should not be influenced by sympathy, prejudice, fear or public opinion.

Evidence that on some former occasion a witness other than the defendant made a statement inconsistent with his testimony in this case may be considered by you only in determining the credibility of the witness and not to establish the truth of the matters contained in that prior statement.

IT IS PROPER FOR AN ATTORNEY TO INTERVIEW ANY WITNESS IN PREPARATION FOR TRIAL.

Evidence has been received concerning statements said to have been made by the defendant. It is for you to determine whether the defendant did in fact make the statements. If you find that the defendant did make the statements, then you must determine what weight, if any, you feel the statements deserve. In determining what weight, if any, should be given the statements, you should consider all matters in evidence having to do with the statements, including those concerning the defendant's personal characteristics and the conditions under which the statements were made.

Evidence that the defendant has been convicted of a crime is to be considered by you only insofar as it may affect his credibility as a witness.  It must not be considered by you as evidence of guilt of the crimes for which that defendant is on trial.

THE RELIABILITY OF EYEWITNESS IDENTIFICATION HAS BEEN RAISED AS AN ISSUE IN THIS CASE AND DESERVES YOUR ATTENTION. IDENTIFICATION TESTIMONY IS AN EXPRESSION OF BELIEF OR IMPRESSION BY THE WITNESS.  ITS VALUE DEPENDS UPON THE OPPORTUNITY THE WITNESS HAD TO OBSERVE THE OFFENDER AT THE TIME OF THE OFFENSE AND LATER TO MAKE A RELIABLE IDENTIFICATION, AND UPON THE INFLUENCES AND CIRCUMSTANCES UNDER WHICH THE WITNESS MADE THE IDENTIFICATION.

YOU MUST CONSIDER THE CREDIBILITY OF EACH IDENTIFICATION WITNESS IN THE SAME WAY AS ANY OTHER WITNESS.  CONSIDER WHETHER HE IS TRUTHFUL, AND CONSIDER WHETHER HE HAD THE CAPACITY AND OPPORTUNITY TO MAKE A RELIABLE OBSERVATION ON THE MATTER COVERED IN HIS TESTIMONY.

THE GOVERNMENT HAS THE BURDEN OF PROVING BEYOND A REASONABLE DOUBT THAT THE DEFENDANT WAS THE PERSON WHO COMMITTED THE CRIME.

You have heard testimony of expert witnesses. This is admissible where the subject matter involved requires knowledge, special study, training, or skill not within ordinary experience, and the witnesses are qualified to give expert opinions.

However, the fact that an expert has given an opinion does not mean that it is binding upon you or that you are obligated to accept the expert's opinion as to the facts. You should assess the weight to be given to the expert opinions in the light of all the evidence in this case.

The weight to be given to any particular evidence is not necessarily determined by the number of witnesses testifying on behalf of each side. You are to consider all the evidence in the case in determining the credibility of witnesses. You may find that the testimony of a smaller number of witnesses for one side is more credible than the testimony of a greater number of witnesses for the other side.

To sustain the charge of interference with commerce by robbery; the government must prove the following propositions:

First, the defendant knowingly and willfully obtained property from the person(s) described in counts 1, 7, 8, and 12 of the indictment;

Second, the defendant did so by means of robbery;

Third, the defendant knew that the person(s) described in counts 1, 7, 8, and 12 parted with property because of the robbery; and;

Fourth, the robbery affected commerce.  It is not necessary for you to find that the defendant knew or intended that his actions would affect commerce.  It is only necessary that the natural consequences of the acts committed by the defendant charged in the indictment were to affect commerce in any way or degree.

If you find from your consideration of all the evidence that each of these propositions has been proved beyond a reasonable doubt, then you should find the defendant guilty.

If, on the other hand, you find from your consideration of all the evidence that any of these propositions has not been proved beyond a reasonable doubt, then you should find the defendant not guilty.

To sustain the charge in Counts 2, 4, 6, 9, 11, and 13 of the indictment of using and carrying a firearm during and in relation to a crime of violence, the government must prove the following propositions as to each defendant:

First, the defendant is guilty of the offenses charged in Counts 1, 3, 5, 8, 10, and 12 of the indictment; and Second, the defendant used or carried a firearm during and in relation to the offense charged in those counts.

If you find from your consideration of all the evidence that each of these propositions has been proved beyond a reasonable doubt, then you should find the defendant guilty of counts 2, 4, 6, 9, 11, and 13. If, on the other hand, you find from your consideration of all the evidence that any of these propositions has not been proved beyond a reasonable doubt, then you should find the defendant not guilty of those counts for which the evidence was lacking.

To sustain the charge in Counts 3, 5, and 10 of the indictment of interstate travel in aid of racketeering enterprises, the government must prove the following propositions:

First, the defendant traveled in interstate commerce, or used or caused to be used a facility in interstate commerce, including the mail;

Second, the defendant did so with the intent to commit a crime of violence to further unlawful activity;

Third, thereafter the defendant did commit or attempt to commit a crime of violence to further unlawful activity.

If you find from your consideration of all the evidence that each of these propositions has been proved beyond a reasonable doubt, then you should find the defendant guilty.

If, on the other hand, you find from your consideration of all the evidence that any of these propositions has not been proved beyond a reasonable doubt, then you should find the defendant not guilty.

The indictment charges that the offense was committed "on or about"

_____. Although the evidence need not establish with certainty the exact date
of the alleged offense, it must establish that the offense was committed on a date
reasonably near the date charged.

When the word "knowingly" is used in these instructions, it means that the defendant realized what he was doing and was aware of the nature of his conduct, and did not act through ignorance, mistake, or accident.  Knowledge may be proved by the defendant's conduct, and by all the facts and circumstances surrounding the case.

The term "interstate commerce" means travel between one state and another state or use of an interstate facility, including the mail.

The interstate travel must relate significantly to the illegal activity charged in the indictment; that is, the relationship must be more than minimal or incidental. The interstate travel however, need not be essential to the success of such illegal activity.

The defendant need not have contemplated or knowingly caused the interstate travel.

Robbery means the unlawful taking or obtaining of personal property from the person or in the presence of another, against his or her will, by means of actual or threatened force, or violence or fear of injury, immediate or future, to his or her person or property, or property in his or her custody or possession, or of anyone in his or her company at the time of the taking or obtaining.

Extortion means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence or fear.  Extortion by wrongful use of fear requires that the fear be reasonable under the circumstances.

"Unlawful activity" includes extortion; in violation of the laws of the state in which it is committed or of the United States.

The term property includes money, checks, and currency.

A defendant "uses" a firearm when he "actively employs" the firearm in the commission of the offense. This includes brandishing, displaying, bartering, striking with, and most obviously, firing or attempting to fire, a firearm." The definition of "carry" is distinct from the term "use"; a defendant "carries" a gun when he possesses and transports it within reasonable reach.

The term "crime of violence" means -

(a)  an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(b)  any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

Upon retiring to the jury room, select one of your number as your foreperson. The foreperson will preside over your deliberations and will be your representative here in court.

Forms of verdict have been prepared for you.

Take these forms to the jury room, and when you have reached unanimous agreement on the verdict, your foreperson will fill in and date the appropriate form, and each of you will sign it.

I do not anticipate that you will need to communicate with me. If you do, however, the only proper way is in writing, signed by the foreperson, or if he or she is unwilling to do so, by some other juror, and given to the marshal.

The verdict must represent the considered judgment of each juror. Your verdict, whether it be guilty or not guilty, must be unanimous.

You should make every reasonable effort to reach a verdict. In doing so, you should consult with one another, express your own views, and listen to the opinions of your fellow jurors. Discuss your differences with an open mind. Do not hesitate to re-examine your own views and change your opinion if you come to believe it is wrong. But you should not surrender your honest beliefs about the weight or effect of evidence solely because of the opinions of your fellow jurors or for the purpose of returning a unanimous verdict.

The twelve of you should give fair and equal consideration to all the evidence and deliberate with the goal of reaching an agreement which is consistent with the individual judgment of each juror.

You are impartial judges of the facts. Your sole interest is to determine whether the government has proved its case beyond a reasonable doubt.

To "attempt" an offense means willfully to do some act, in an effort to bring about or accomplish something the law forbids.